UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| ANNEX BOOKS, INC., et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:03-cv-918-SEB-TAB |
| | ) | |
| CITY OF INDIANAPOLIS, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY GRANTING A PRELIMINARY INJUNCTION**

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction

[Docket No. 112], filed on November 6, 2009, pursuant to Federal Rule of Civil

Procedure 65.[1]  Specifically, Plaintiffs, Annex Books, Inc., New Flicks, Inc., d/b/a New

Flicks, Lafayette Video and News, Inc., d/b/a Lafayette Video and News, and Keystone

Video and Newsstand, Inc., d/b/a Keystone Video, seek preliminary relief enjoining

Defendant, the City of Indianapolis ("the City"), from enforcing against Plaintiffs Chapter

807 of the Revised Code of the Consolidated City and County of Indianapolis, Marion

County ("City-County Code"), the enforcement of which Plaintiffs allege violates their

rights secured by the First and Fourteenth Amendments.  A hearing was held on

---

[1] The Court has interpreted Plaintiffs' motion for temporary restraining order and
preliminary injunction as a motion for preliminary injunction because Plaintiffs seek relief for a
time period which could last more than twenty days.  A temporary restraining order that remains
in force longer than twenty days must be treated as a preliminary injunction.  Commodity
Futures Trading Comm'n v. Lake Shore Asset Mgmt. Ltd., 496 F.3d 769, 771 (7th Cir. 2007).

November 25, 2009, at which the parties presented evidence and oral argument.

Having considered the parties briefing, the documentary evidence, and oral argument, for the reasons detailed below, the Court GRANTS Plaintiffs' motion.

**Factual and Procedural Background**

At issue in this case is the constitutionality of Chapter 807 of the City-County Code, which deals with the regulation of adult businesses.  In 2003, the City revised its adult-business ordinances, expanding the definition of "adult entertainment business" to include any retail outlet that obtains at least 25% of its revenue from or devotes 25% or more of its space or inventory to adult books, magazines, films, and devices, and requiring any such business to close between the hours of midnight and 10 a.m., Monday through Saturday, as well as prohibiting them from engaging in the sale of materials at any time on Sundays.  See Indianapolis Rev. Code §§ 807-103, -202(a), -301(f), -302. Plaintiffs are all businesses that fall within the revised definition of adult entertainment business under the ordinance.

When this case originally came before the court, Plaintiffs sought declaratory and injunctive relief prohibiting the enforcement against them of Chapter 807, as amended, which they maintained violated their rights under the First and Fourteenth Amendments. On November 3, 2003, after a hearing on the merits, the Court enjoined enforcement of the ordinance pending "further order of the Court or a final resolution of the merits of the case."  Docket No. 51, at 9.  The City subsequently agreed to refrain from enforcing the

ordinance until a final decision on the merits was rendered.  On April 1, 2005, the Court

entered final judgment in favor of the City, holding that enforcement of Chapter 807 did

not violate Plaintiffs' constitutional rights.  Plaintiffs appealed and, on September 3,

2009, the Seventh Circuit affirmed the Court's judgment regarding the licensing

procedure set out in the ordinance, but reversed and remanded the case for an evidentiary

hearing on the substantive First Amendment issues.  The mandate from the Seventh

Circuit was issued on November 3, 2009.  On November 6, 2009, Plaintiffs filed the

instant motion for preliminary injunction.

## Legal Analysis

### I.     Standard of Review

The grant of injunctive relief is appropriate if the moving party is able to

demonstrate: (1) a reasonable likelihood of succeeding on the merits; (2) irreparable harm

if preliminary relief is denied; and (3) an inadequate remedy at law.  Girl Scouts of

Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc., 549 F.3d

1079, 1086 (7th Cir. 2008).  If the moving party fails to demonstrate any one of these

three threshold requirements, the emergency relief must be denied.  Id.  However, if these

threshold conditions are met, the Court must then assess the balance of harm – the harm

to Plaintiffs if the injunction is not issued against the harm to Defendant if it is issued –

and, where appropriate, also determine what effect the granting or denying of the

injunction would have on nonparties (the public interest).  Id.

3

In determining whether to grant injunctive relief, the district court must take into account all four of these factors and then "exercise its discretion 'to arrive at a decision based on the subjective evaluation of the import of the various factors and a personal, intuitive sense about the nature of the case." Id. (quoting Lawson Products, Inc. v. Avnet, Inc., 782 F.2d 1429, 1436 (7th Cir. 1986)).  This process involves engaging in what is called the "sliding scale" approach, meaning that "the more likely it is the plaintiff will succeed on the merits, the less balance of irreparable harms need weigh toward its side; the less likely it is the plaintiff will succeed, the more the balance need weigh towards its side." Abbott Laboratories v. Mead Johnson & Co., 971 F.2d 6, 12 (7th Cir. 1992).  The sliding scale approach "is not mathematical in nature, rather 'it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief.'" Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 895-96 (7th Cir. 2001) (quoting Abbott Laboratories, 971 F.2d at 12).

## II.    Discussion

### A.    Likelihood of Success on the Merits

In its ruling, the Seventh Circuit held that in order for the revised ordinance to pass constitutional muster, the City must present evidence that adult book or video stores without live entertainment or private booths, open after midnight, or on Sunday, cause adverse secondary effects sufficiently severe to justify the curtailment of speech which results from the City's post-2003 system of regulation.  See Annex Books, Inc. v. City of

4

Indianapolis, 581 F.3d 460, 465-67 (7th Cir. 2009).  Thus, in order to satisfy the burden explicated by the Seventh Circuit, the City must essentially make two showings: first, that adult entertainment businesses lacking facilities for on-premise viewing create the same secondary effects as establishments providing those services, and second, that the revised ordinance requiring Plaintiffs to close from midnight to 10:00 a.m. Monday through Saturday and all day on Sunday "has the purpose and effect of suppressing secondary effects, while leaving the quantity and accessibility of speech substantially intact."  Id. (quoting City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 449 (2002) (Kennedy, J., concurring)).  If the City is unable to produce such evidence, the revised ordinance cannot stand.

Judge Easterbrook, writing for the panel, highlighted various deficiencies in the evidence the City presented to the Seventh Circuit which called the City's justification for the revised ordinance into question.  For example, none of the studies on which the City relied before crafting its revised ordinance nor those that it originally cited in support of revised Chapter 807 in this litigation dealt with the type of ordinance at issue here (i.e., restrictions on the hours adult entertainment businesses can be open).  Nor did those studies assess the effects of stores that sell as little as 25% adult products, such as the businesses covered under the City's revised ordinance.  Moreover, the studies on which the City relied concerned adult businesses that offer on-premise viewing booths, live shows, or both, and three out of the four Plaintiffs in this suit do not offer such entertainment.

When the Seventh Circuit remanded the case, it had found the evidence the City had submitted up to that point in support of its revised ordinance to be deficient. Therefore, in assessing likelihood of success on the merits, we focus only on whether the new evidence the City has submitted in opposing the instant motion appears sufficient to have cured the deficiencies highlighted by the appellate court.  We note that the hearing the court held on November 6, 2009 was only to address Plaintiffs' motion for preliminary injunction; the full evidentiary hearing for which the case was remanded will be held at a later date.  Thus, we recognize that the evidence presented by the City at the hearing is only preliminary and that the City intends to more fully develop its statistical evidence before the evidentiary hearing.  We remain mindful of that fact in light of the Seventh Circuit's recognition that "municipalities should get the benefit of the doubt" in our analysis.  Annex Books, 581 F.3d at 466.

To support its conclusion that adult businesses without on-premise viewing cause the same secondary effects as adult business without such services, the City cites to an article co-authored by its expert, Dr. Richard McCleary, which discusses a link between adult book stores without live entertainment or private viewing and secondary effects crimes.  Def.'s Exh. A (Richard McCleary & Alan C. Weinstein, Do "Off-Site" Adult Businesses Have Secondary Effects? Legal Doctrine, Social Theory, and Empirical Evidence, 31 LAW & POLICY 217-35 (2009) ("McCleary Article").  In the McCleary Article, the authors theorize that: "To the extent that on-site and off-site adult bookstores attract high-value targets from wide catchment areas, both business types are expected to

6

attract predators to their neighborhoods, thereby generating ambient victimization risk." Id. at 223.  In support of that conclusion, the authors cite to a case study from Sioux City, Iowa, which showed that crime rose 190% in the area within 500 feet of a new off-site viewing adult bookstore, while crime in a comparable control area only rose 25% during the same period.  Id. at 223-25.  The study also revealed that the most significant increase in crime occurred during the store's "overnight shift" from 8:00 p.m. to 3:59 a.m.  Id. at 227-28.

While this evidence appears to be a step in the direction required by the Seventh Circuit,[2] it is not without criticism.  For example, Plaintiffs point to the Seventh Circuit's recent decision in an analogous case, New Albany DVD, LLC v. City of New Albany, 581 F.3d 556 (7th Cir. 2009), in which the court criticized the City of New Albany's justification for its adult regulation based on increased thefts as "paternalistic."  Id. at 560.  Plaintiffs also cite the Northern District of Iowa's decision in Dr. John's, Inc. v. City of Sioux City, 438 F. Supp. 2d 1005 (N.D. Iowa 2006), where Dr. McCleary's data was originally submitted in support of Sioux City's regulation of an adult bookstore.  The court heavily criticized Dr. McCleary's data in that case, stating the flaws identified "cast reasonable doubt not only on the validity of Dr. McCleary's report, but on whether any municipality could reasonably have believed that his report supported the regulations at issue here."  Id. at 1048-49.  The City rejoins that the criticism leveled in New Albany

---

[2] Judge Easterbrook made clear in the Seventh Circuit's opinion that the City's evidence "need not be local."  Annex Books, 581 F.3d at 463.

does not apply to the McCleary Article because the authors consider all crime, not just theft.  Moreover, the City asserts that, since the time that the study was criticized by the Northern District of Iowa, Dr. McCleary has refined his work, using larger data sets and evaluating crimes within 500 feet of the store instead of fifty feet to address the court's concerns.

We need not make a definitive determination on the persuasiveness of the McCleary Article at this juncture, however, because even assuming that it is sufficient to show that adult businesses without on-premise viewing cause the same secondary effects as adult businesses which do offer such services, that is not the end of our inquiry.  The Seventh Circuit ruling makes clear that the City still must demonstrate that its ordinance meets Justice Kennedy's cost-benefit standard, meaning that it must advance some basis to show that its regulation "is likely to cause a significant decrease in secondary effects and a trivial decrease in the quantity of speech." Annex Books, 581 F.3d at 465 (quoting Alameda Books, 535 U.S. at 445 (Kennedy, J., concurring)).  The evidence submitted by the City up to this point does not support such a conclusion.  In fact, the statistical evidence presented by the City comparing crime rates before and after enforcement of the revised ordinance actually shows that overall crime[3] actually increased by 19% following enforcement in the areas within 500 feet of Plaintiffs' businesses, compared to an increase

_____

[3] "Overall crime" includes both violent/person crimes (aggravated assault, forcible rape, homicide, and robbery) and property crimes (arson, burglary, larceny/theft, and motor vehicle theft).

8

of 13% in the balance of the Indianapolis Police Department ("IPD") district. Def.'s Exh. B at Tbl. 1.[4]

More specifically, on Sundays, crime characterized by the City as "violent/person crime," which includes aggravated assault, forcible rape, homicide, and robbery, increased by 138% in the areas near Plaintiffs' businesses after enforcement; "property crimes," which include arson, burglary, larceny/theft, and motor vehicle theft, increased by 30% following enforcement of the revised ordinance; and overall crime increased by 46%. Id. at Tbl. 4. In comparison, on Sundays in the balance of the IPD district during that same time period, violent/person crime increased 14%, property crime increased 10%, and overall crime increased by only 11%. Id. During the hours of midnight to 10:00 a.m., property crimes within 500 feet of Plaintiffs' locations increased by 59% and overall crime increased by 29%. During those hours in the balance of the IPD district, property crimes increased 25% and overall crime increased 21%. Id. at Tbl. 3.

The City downplays these statistics, citing instead to a decrease in violent/person crime near Plaintiffs' businesses, both overall, and specifically during the hours of midnight and 10:00 a.m. Violent/person crime within 500 feet of Plaintiffs' businesses decreased by 10% overall and 50% between the hours of midnight and 10:00 a.m. following enforcement of the revised regulation. In comparison, violent/person crime

_____

[4] On November 23, 2009, the City filed a motion to substitute a corrected version of its Exhibit B which contains various charts assessing Indianapolis crime statistics before and after enforcement of the revised ordinance. We hereby GRANT Defendant's Motion to Substitute Exhibit B to Defendant's Response [Docket No. 123]. All citations to "Def.'s Exh. B" in this entry refer to the corrected version of the exhibit.

increased 8% overall in the balance of the IPD district and increased 12% during the overnight hours.  Id. at Tbls. 1, 3.  However, when analyzed more closely, we find that the raw numbers are so small that they cannot justify the reduction in speech that results from the City's revised ordinance.  For example, during the hours of midnight to 10 a.m., in the area near New Flicks, violent/person crime declined from one incident over the course of three years before the law was enforced to none after.  Near Annex Books and Keystone Video there were two and three fewer incidents, respectively, of violent/person crime over the course of three years.  Such minimal decreases in a narrow category of crime are clearly too insignificant to determine whether the decrease in violent/person crime was due to enforcement of the revised ordinance as opposed to chance, let alone to justify the significant reduction in speech resulting from the City's post-2003 regulation as required by Justice Kennedy's cost-benefit analysis.

For the foregoing reasons, we find that the evidence the City has presented, at least up to this point, is likely insufficient to satisfy the burden set out in the Seventh Circuit's ruling so as to justify the revised ordinance.  Accordingly, we find that, at this stage in the proceedings, Plaintiffs have demonstrated at least some likelihood of success on the merits.

### B.    Inadequate Remedy at Law/Irreparable Harm

It is well established that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  Elrod v. Burns,

10

427 U.S. 347, 373 (1976) (citations omitted).  Thus, because Plaintiffs have shown that they have at least some likelihood of successfully demonstrating that enforcement of the City's ordinance results in unlawful curtailment of speech, it is clear that they have met their burden of showing the possibility of an irreparable injury (as a result of the deprivation of the claimed free speech rights) for which there is no adequate remedy at law.

### C.       Balance of Harms and the Public Interest

The balance of harms and public interest factor also weigh in favor of Plaintiffs. Initially, we recognize that, generally, under Seventh Circuit precedent "there can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute because 'it is always in the public interest to protect First Amendment liberties.'"  Joelner v. Village of Washington Park, 378 F.3d 613, 620 (7th Cir. 2004) (quoting Connection Distrib. Co. v. Reno, 154 F.3d 281, 288 (6th Cir. 1998)). However, when the challenged statute regulates the adult entertainment business, conflicting public interests are frequently implicated because "the purpose of adult entertainment regulations often is to minimize the deleterious secondary effects that may accompany adult entertainment businesses (e.g., increased crime rates, decreased property values)."  Id. (citing City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 47 (1986)). The City has proffered such a purpose for its regulations here, and thus, we must weigh the relative harms to the parties stemming from a grant or denial of a preliminary

injunction.

Up to this point in the proceedings, the City has failed to present convincing evidence to show that enforcement of the revised ordinance has resulted in a decrease in secondary effects – in this case, crime – compared to the period during which the previous ordinance was in effect sufficient to outweigh the potential harm to Plaintiffs' free speech rights if a preliminary injunction is not granted.  In fact, as discussed above, the City's statistics show that overall crime within 500 feet of Plaintiffs' businesses has actually increased at all times measured since the ordinance change, as well as during each of the relevant time periods individually (i.e., between the hours of midnight and 10:00 a.m. Monday through Saturday, and all day on Sundays).[5]  Def.'s Exh. B.

Moreover, on Sundays following enforcement of the revised ordinance, "violent/person crime" near Plaintiffs' businesses increased 138% and property crime increased 30%.  Overall crime on Sundays within 500 feet of Plaintiffs' businesses increased 46% following enforcement of the revised ordinance.[6]  Id.  While the City did

---

[5] For example, overall crime for all time periods rose 19% within 500 feet of Plaintiffs' businesses following the ordinance change, while overall crime in the balance of the Indianapolis Police Department's ("IPD") district only increased by 13% during that same period.  Def.'s Exh. B at Tbl. 1.  During the hours of midnight and 10:00 a.m., overall crime near Plaintiffs' businesses increased 29% while overall crime in the rest of the IPD district rose 21%.  Id. at Tbl. 3.  On Sundays, overall crime near Plaintiffs' businesses increased by 46% in comparison to an 11% increase in the balance of the IPD district.  Id. at Tbl. 4.

[6] In the balance of the IPD district during that time period, violent/person crime increased 14% and property crime increased 10%.  Overall crime on Sundays increased 46% in the areas near Plaintiffs' businesses, while crime in the rest of the IPD district increased by only 11%.  Def.'s Exh. B at Tbl. 4.

present evidence showing that crime categorized as "violent/person crime" decreased by 50% in the area near Plaintiffs' businesses during the hours of midnight and 10:00 a.m. during enforcement of the revised ordinance, property crimes within 500 feet of Plaintiffs' businesses increased by 59% during that same time period and overall crime increased by 29%.[7]  Id.  Considering the significant harm to Plaintiffs' free speech rights if the injunction is not issued, we find that the narrow segment of decreased crime during enforcement of the revised ordinance that the City has been able to demonstrate at this stage in the proceedings is insufficient to tip the balance in its favor.  Consequently, we find that the balance of harms and public interest factors weigh in favor of Plaintiffs.

III.    Conclusion

For the foregoing reasons, the Court GRANTS Plaintiffs' Motion for Preliminary Injunction.  Defendant, the City of Indianapolis, and its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it who receive actual notice of this order by personal service or otherwise, are hereby PRELIMINARILY RESTRAINED from enforcing Chapter 807 of the City-County Code against Plaintiffs, their officers, agents, and employees.  Such PRELIMINARY INJUNCTION is effective immediately upon the entry of this ruling on the Court's

---

[7] Violent/person crime increased by 12% and property crime increased by 25% in the rest of the IPD district during the hours of midnight to 10:00 a.m.  Overall crime increased during that time period by 29% in the area surrounding Plaintiffs' businesses and increased 21% in the balance of the IPD district.  Def.'s Exh. B at Tbl. 3.

docket and shall extend until further order of the Court or, in any event, no later than a

final ruling on the merits.   IT IS SO ORDERED.


Date: _____12/01/2009_____


_Sarah Evans Barker_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

14

Copies to:

Lorraine R. Baumgardner
BERKMAN GORDON MURRAY & DEVAN
lbaumgardner@bgmdlaw.com

Paul Thomas Belch
LAW OFFICE OF ST. PAUL TRAVELERS
pbelch@stpaultravelers.com

Richard  Kammen
GILROY, KAMMEN & HILL
rkamm@iquest.net

Teri Jayne Kendrick
ASSISTANT CORPORATION COUNSEL
tkendric@indygov.org

Jonathan Lamont Mayes
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
jmayes@indygov.org

Richard G. McDermott
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
rmcdermo@indygov.org

J. Michael Murray
BERKMAN GORDON MURRAY & DEVAN
jmmurray@bgmdlaw.com

Justin F. Roebel
CITY OF INDIANAPOLIS, OFFICE OF CORPORATION COUNSEL
jroebel@indygov.org

April Edwards Sellers
BAKER & DANIELS - Indianapolis
april.sellers@bakerd.com

Steven D. Shafron
BERKMAN GORDON MURRAY & DEVAN
sshafron@bgmdlaw.com