UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANNEX BOOKS, INC., et al., | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     vs. | ) | 1:03-cv-918-SEB-TAB |
| | ) | |
| CITY OF INDIANAPOLIS, | ) | |
|     Defendant. | ) | |

**SUPPLEMENTAL ORDER
ON PRODUCTION OF PLAINTIFFS' BOOKKEEPING DATA**

**I.    Introduction**

This order addresses an ongoing discovery dispute surrounding the production of Plaintiffs' bookkeeping data. After Defendant moved to compel production of the data [Docket No. 197], Plaintiffs delivered four discs to Defendant and filed a notice with the Court suggesting that the dispute was moot. However, it turned out that the data on the discs was unreadable. Plaintiffs have since hired forensic computer experts to compile and import the data into a reasonably usable form, but importing the data has been unsuccessful. Plaintiffs claim that any further efforts on their part to compile or import the data would be unduly burdensome. Defendant claims that they are entitled to the data and request that Plaintiffs continue to work with forensic experts. For the reasons below, the Court's order on Defendant's motion to compel [Docket No. 220] is affirmed to the extent that Defendant is entitled to Plaintiffs' bookkeeping data in a reasonably usable form, if recoverable. However, that order is supplemented to require Defendant to pay all future costs and expenses associated with any additional attempts to

1

compile or import this data.

## II. Background

This dispute began when Defendant moved to compel production of Plaintiffs' bookkeeping data. [Docket No. 197.] The Court scheduled a hearing for June 14, 2011, to address the motion as well as other discovery matters. [Docket No. 209 at 1.] The Court held the hearing and took the matter under advisement. Before the Court issued an order, Plaintiffs filed a notice of partial mootness, stating that Plaintiffs produced four discs on July 7, 2011, that contained the bookkeeping information that Defendant was seeking. [Docket No. 218 at 1.] The Court then issued an order requiring Defendant to "advise the Court within 14 days from the date of this order its position relative to the recent production of four discs received on July 8, 2011, from the Plaintiffs." [Docket No. 220 at 6.] On July 29, 2011, Defendant filed a notice stating that the motion to compel was not moot because the data on the discs was "completely meaningless and . . . not usable."[1] [Docket No. 219 at 1.] Defendant attached five exhibits [Docket No. 219, Exs. 1–5], showing that the data on the discs was unreadable.[2]

On September 1, 2011, Plaintiffs filed a reply notice stating that they have done everything reasonably required of them. [Docket No. 230 at 5.] Plaintiffs' reply outlines the steps taken to produce the bookkeeping data in a reasonably usable format:

- Hiring Midwest Data Group, a forensic computer specialist [Docket No. 230 at 1];
- Midwest spent 20 hours compiling data [Docket No. 230 at 2];
- Following the Defendant's complaint that the data was not usable, Midwest spent

---

[1]The Court's order was docketed on August 1, 2011, but approved and sent to docketing before Defendant responded to Plaintiffs' suggestion of mootness.

[2]Defendant filed a second notice on August 15, 2011. [Docket No. 225.]

- 12 hours attempting to find a solution [*id.*];
- Midwest charged $7,319.17 for its services [*id.*];
- Plaintiffs retained Evron Computer Systems Corp. to help compile data, which cost $2,200 [*id.* at 4];
- Plaintiffs mailed a sample of the recovered data to Defendant for review, but Defendant was unable to import the sample data into their office's QuickBooks program and suggested that Plaintiffs import the data using a more advanced version of QuickBooks known as QuickBooks Pro [*id.*];
- Plaintiffs purchased QuickBooks Pro and attempted to import the data. [*id.*]

On September 19, 2011, Plaintiffs filed a supplemental reply stating that Plaintiffs' bookkeeping data could not be imported to QuickBooks using QuickBooks Pro because Platinum[3] and QuickBooks are not compatible. [Docket No. 230 at 4; Docket No. 233 at 1.] Plaintiffs assert that "they have satisfied their burden of producing the electronic bookkeeping records, in a usable and readable format, and at great expense, have done everything that could reasonably be asked of them in this regard." [*Id.* at 2.] On November 14, 2011, Defendant filed a supplemental response, asserting that Plaintiffs should continue to work with Evron to import the data. [Docket No. 236 at 3.]

**III. Discussion**

Federal Rule of Civil Procedure 34 requires that electronically stored information be produced in "a reasonably usable form." The advisory committee notes for the 2006 amendments to Rule 34 further state:

> Rule 34(a) requires that, if necessary, a responding party "translate" information it produces into a "reasonably usable" form. Under some circumstances, the responding party may need to provide some reasonable amount of technical support, information on application software, or other reasonable assistance to enable the requesting party to use the information.

However, the advisory committee notes also recognize:

---

[3]Plaintiffs bookkeeping data is stored on a server known as Platinum. [Docket No. 230, Ex. 1 at 1.]

> Some electronically stored information may be ordinarily maintained in a form that is not reasonably usable by any party. One example is "legacy" data that can be used only by superseded systems. The questions whether a producing party should be required to convert such information to a more usable form, or should be required to produce it at all, should be addressed under Rule 26(b)(2)(B).

In this case, Plaintiffs ordinarily maintain their records on Platinum and Defendant uses QuickBooks. According to Plaintiffs' forensic team, these programs are incompatible and therefore data cannot be imported from Platinum to QuickBooks so that it is in a reasonably readable format. [Docket No. 230 at 4.] Defendant, nonetheless, requests that Plaintiffs continue to work with its forensic experts. [Docket No. 236 at 3.]

Whether Plaintiffs should be required to continue their efforts to import the bookkeeping data to QuickBooks is a question that should be guided by Federal Rule of Civil Procedure 26(b)(2)(B). Rule 26(b)(2)(B) provides that:

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Generally, a responding party bears the costs of complying with discovery requests. *Clean Harbors Envtl. Sevs. v. ESIS, Inc.*, No. 09-C-3789, 2011 WL 1897213, at *2 (N.D. Ill. May 17, 2011). But a responding party may ask the Court to protect it from "undue burden or expense" by either restricting the discovery sought or by shifting the costs to the nonproducing party. *Id.* Generally, cost shifting is appropriate when data is inaccessible. *Id.* Within the Seventh Circuit, district courts have used an eight-factor test to determine when it is appropriate to shift costs for seemingly inaccessible data. *Id.* The eight-factor test addresses:

> 1) the likelihood of discovering critical information; 2) the availability of such information from other sources; 3) the amount in controversy as compared to the total cost of production; 4) the parties' resources as compared to the total cost of production; 5) the relative ability of each party to control costs and its incentive to do so; 6) the importance of the issues at stake in the litigation; 7) the importance of the requested discovery in resolving the issues at stake in the litigation; and 8) the relative benefits to the parties of obtaining the information.

*Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 573 (N.D. Ill. 2004).

After considering these factors, the Court makes the following findings. First, critical information is likely to be discovered in Plaintiffs' bookkeeping records since that is a natural place to find information about Plaintiffs' revenue and expenses. Second, information about Plaintiffs' revenue and expenses can be obtained from alternative sources, such as Plaintiffs' tax records and inventory data. *Wiginton*, 229 F.R.D. at 574 ("If the information is available from another source, the marginal utility from the e-discovery is low, and would support cost-shifting."). This information has already been requested and ordered produced. [*See* Docket No. 229 at 3–4.] Moreover, revenue and expense information could also be obtained through Plaintiffs' accounting records, sales receipts, and other financial statements.

Third, Plaintiffs are alleging lost profits in excess of $3 million based on Defendant's enforcement of its hours of operation regulation for adult bookstores. [Docket No. 220 at 1.] Plaintiffs have retained two computer forensic services, paid them at least $9,500 for over thirty hours of work, and purchased QuickBooks Pro in an attempt to import the data. [Docket No. 230 at 4.] While $9,500 is a mere fraction of Plaintiffs' claimed loses of $3 million (a number that Defendant strongly contests), Plaintiffs' forensic team claims that Platinum and QuickBooks are incompatible. [Docket No. 233; Docket No. 230, Ex. 1 at 4.] Thus, requiring Plaintiffs to continue to spend money in an apparently dead-end attempt to import data to QuickBooks is

unreasonable and highly likely to result in disproportional costs.

Fourth, the Court cannot conclude from the record that Plaintiffs have significant financial resources, and in fact it is possible that the Defendant, a municipality, has greater financial resources than Plaintiffs. *Cf. Wiginton*, 229 F.R.D. at 575–76 (citing *Expedior Creditor Tr. v. Credit Suisse First Boston, Inc.*, 309 F. Supp. 2d 459, 466 (S.D.N.Y. 2003) (finding that this factor weights against cost-shifting where defendant's assets dwarfed plaintiff's assets even if plaintiff's attorney could contribute)). Additionally, Plaintiffs' litigation resources have likely been depleted to some extent considering that this case has dragged on since 2003 and is still in the discovery stage nearly nine years later. Fifth, for the reasons articulated under factors three and four, Plaintiffs have a significant incentive to control costs, but are unlikely able to do so since Platinum and QuickBooks are incompatible.

Sixth, the bookkeeping data is important to the issues at stake since revenue and expense data contained in Plaintiffs' books are relevant to Plaintiffs' lost profit claim. Seventh, while the data is beneficial to resolving the issues at stake, revenue and expense information is accessible through other sources such as those listed under the second factor. Finally, although the data is relevant and potentially beneficial to either party, it is more likely to benefit the requesting party. *Wiginton*, 229 F.R.D. at 577 ("This factor is the least important because in discovery the requested information is more likely to benefit the requesting party.").

Taking these factors into consideration, the Court is mindful that Plaintiffs' bookkeeping data is relevant, important, and reasonably likely to lead to admissible evidence. However, Plaintiffs have retained two computer forensic services, spent at least $9,500 for over thirty hours of work, purchased QuickBooks Pro, and still have not been successful in importing the

bookkeeping data to QuickBooks. Plaintiffs have made a good faith attempt to comply with its discovery obligations, and Plaintiffs have demonstrated to the Court's satisfaction that the data is not reasonably accessible because of the undue burden and costs. Rule 26(b)(2)(B) permits the Court to order discovery of the data sought if the requesting party demonstrates good cause, and the rule further provides that the Court may specify the conditions for discovery.

While the Defendant has demonstrated good cause (given the relevance of the data to Plaintiffs' damages claim), Defendant has not offered any alternative suggestions as to how the data can be obtained. In fact, Defendant apparently only seeks the data in QuickBooks format at Plaintiffs' expense. [*See* Docket No. 236.] It is unreasonable for Defendant to take this one-track approach in light of the incompatibility of the programs. Nevertheless, if Defendant believes that the data on Platinum can be imported to QuickBooks—contrary to the suggestion of Plaintiffs' forensic team—then the Court specifies as a condition of discovery that Defendant must bear the future costs of continuing down this road.[4] To the extent that revenue and expense information is still obtainable from other discoverable sources, the parties may confer to reach a mutually agreeable resolution.

---

[4]Defendant criticizes Plaintiffs' choice to use Keith Roberts (i.e. Midwest Data Group) over Evron [Docket No. 236 at 3], but that criticism holds no weight since Plaintiffs hired Evron to work with Roberts. [*See* Docket No. 230, Ex. 1 at 2–4.]

## IV. Conclusion

For the reasons above, the Court's order on Defendant's motion to compel [Docket No. 220] is affirmed to the extent that Defendant is entitled to Plaintiffs' bookkeeping data in a reasonably usable form, if recoverable. However, that order is supplemented to require Defendant to pay all future costs and expenses associated with any additional attempts to compile or import Plaintiffs' bookkeeping data.

Dated: 03/14/2012

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Lorraine R. Baumgardner
BERKMAN GORDON MURRAY & DEVAN
lbaumgardner@bgmdlaw.com

Scott D. Bergthold
LAW OFFICE OF SCOTT D. BERGTHOLD PLLC
sbergthold@sdblawfirm.com

Stephen S. Duggins
LAW OFFICE OFSCOTT D. BERGTHOLD, PLLC
sduggins@sdblawfirm.com

Bryan A Dykes
LAW OFFICE OF SCOTT D. BERHTHOLD, PLLC
bdykes@sdblawfirm.com

Richard Kammen
GILROY, KAMMEN & HILL
richard@kammenlaw.com

Richard G. McDermott
OFFICE OF CORPORATION COUNSEL
rmcdermo@indygov.org

J. Michael Murray
BERKMAN GORDON MURRAY & DEVAN
jmmurray@bgmdlaw.com

Justin F. Roebel
CITY OF INDIANAPOLIS, OFFICE OF CORPORATION COUNSEL
jroebel@indygov.org

Steven D. Shafron
BERKMAN GORDON MURRAY & DEVAN
sshafron@bgmdlaw.com

Alexander Phillip Will
OFFICE OF CORPORATION COUNSEL
awill@indygov.org